UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
O.D.F. OPTRONICS LTD. and WAVE GROUP
LTD.,

        Plaintiffs,     Case No. 08-4746 (DLC)

   -against-

REMINGTON ARMS COMPANY, INC.,
MIGUEL PEREZ d/b/a TACTICAL DEPOT and
John Does 1-10 being defendants whose names
are currently unknown but are engaged in the
wrongdoing alleged in the complaint herein,

        Defendants.
--------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO
## <u>PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION</u>



RUSKINMOSCOUFALTISCHEKP.C.
*Counselors at Law*

1425 REXCORP PLAZA
UNIONDALE, NEW YORK 11556-1425

(516) 663-6600

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ............................................................ 1

FACTUAL BACKGROUND ............................................................... 3

ARGUMENT .................................................................................. 6

    A.    Standard for Preliminary Injunction ..................................... 6

    B.    There Is No Danger that ODF Will Suffer "Imminent, Irreparable Injury" ........................................................... 8

    C.    ODF Is Not Likely To Succeed on Its Underlying Claims ................ 12

    D.    A Balancing of the Equities Does Not Tip Decidedly in ODF's Favor .................................................................. 15

    E.    Expedited Discovery Is Not Warranted, and if Allowed, Must Proceed Mutually Within New York ........................ 16

CONCLUSION .............................................................................. 17

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Brenntag Chems. Inc. v. Bank of India*, 175 F.3d 245 (2d Cir. 1999) ...................... 7

*Cutler-Hammer, Inc. v. Universal Relay Corp.*, 285 F. Supp. 636
(S.D.N.Y. 1968) ................................................................................. 15

*Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144
(2d Cir. 1999) ................................................................................. 7–8

*Forest Labs., Inc. v. Abbott Labs.*, 1999 WL 33299123 (W.D.N.Y.
1999), *aff'd* 239 F.3d 1305 ................................................................ 14

*Gidatex, S.R.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417
(S.D.N.Y. 1998) ................................................................................. 7

*Grand Light & Supply Co. v. Honeywell, Inc.*, 80 F.R.D. 699
(D. Conn. 1978) ................................................................................. 9

*Innomed Labs, LLC v. Alza Corp.*, 368 F.3d 148 (2d Cir. 2004) ........................... 14

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir.
1979); ................................................................................. 7, 12

*Kitty Walk Sys., Inc. v. Midnight Pass Inc.*, 431 F. Supp. 2d 306
(E.D.N.Y. 2006) ................................................................................. 14

*Lanvin Inc. v. Colonia, Inc.*, 739 F. Supp.182 (S.D.N.Y. 1990) .......................... 8, 9

*Litho Prestige v. News Am. Pub'g, Inc.*, 652 F. Supp. 804 (S.D.N.Y.
1986) ................................................................................. 11, 16

*Morgan Stanley & Co., Inc. v. Archer Daniels Midland Co.*, 570
F. Supp. 1529 (S.D.N.Y. 1983) ................................................................ 7

*Polymer Tech. Corp. v. Mimran*, 975 F.2d 58 (2d Cir. 1992) ............................... 15

*Roso-Lino Distrib., Inc. v. Coca-Cola Bottling Co.*, 749 F.2d 124 (2d
Cir. 1984) ................................................................................. 10

*United Retail Inc. v. Main Street Mall Corp.*, 903 F. Supp. 12
(S.D.N.Y. 1995) ................................................................................. 8, 10, 11

*USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488 (S.D.N.Y. 1989) ...................................................................................................... 8

*World Love Prods., Inc. v. Keepers Indus., Inc.*, 1993 WL 6591 (1993) ................................................................................................................ 7


**<u>Other Authorities</u>**

McCarthy on Trademarks § 25:41 ........................................................... 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – – – – – – – – – – – – x
O.D.F. OPTRONICS LTD. and WAVE GROUP
LTD.,

                           Plaintiffs                Case No. 08-4746 (DLC)

   -against-

REMINGTON ARMS COMPANY, INC., MIGUEL
PEREZ d/b/a TACTICAL DEPOT and John Does
1-10 being defendants whose names are currently
unknown but are engaged in the wrongdoing alleged
in the complaint herein,

                          Defendants.
– – – – – – – – – – – – – – – – – – – – – – – – – – – – x

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION

### PRELIMINARY STATEMENT

Defendant Remington Arms Company, Inc. ("Remington") submits this

Memorandum of Law in opposition to plaintiffs O.D.F. Optronics Ltd. and Wave

Group Ltd.'s (together, "ODF") motion for a preliminary injunction barring

Remington from shipping certain "Eyeball" optical units.  Remington sold the

units before the April 15, 2008 deadline agreed to by the parties, and post-sale

delivery in no way threatens ODF.  Because the Distribution Agreement upon

which ODF relies was expressly terminated and waived, ODF is not likely to prevail on the merits.  Injunctive relief is thus patently unwarranted.

Plaintiffs certainly do not stand to suffer irreparable harm, the *sine qua non* of injunctive relief.  Plaintiffs have inflated their contract case with empty patent and trademark allegations – ignoring the governing "first sale" doctrine, which permits re-sale of patented and trademarked goods.  Shipment of the units sold by Remington within the parties' agreed sell-off period would not harm plaintiffs in any manner – not monetarily and certainly not irreparably.

Plaintiffs claim that Remington is violating some amorphous "market price" restriction, despite that neither the parties' governing agreement nor the law provides for any such price constraint.  Plaintiffs further claim that Remington is selling in violation of abandoned limits concerning "Territory" and "Markets," despite that (1) Remington has not done so and (2) those limits were "absolutely and irrevocably" waived by the parties in their February 12, 2008 Termination Agreement – which discontinued their former Distribution Agreement without reservation (except as to the time limit for Remington to sell its remaining stock).

Even if true, plaintiffs' allegations would amount to nothing more than a simple breach of contract action for which monetary damages would be adequate.  For that reason alone, plaintiffs' request for injunctive relief (enjoining any further shipments by Remington of products that are used to protect law enforcement,

military and civilian lives) is categorically improper and should be denied.
Regardless, as fully detailed herein and in the accompanying Declaration of Robert
Pantle, the fact of the matter is that plaintiffs' claims have no merit because
Remington has not violated any terms of the Termination Agreement that controls
the parties' rights and obligations. Further, absent some extraordinary "company
threatening" condition not presented here, plaintiffs have no right to the relief
sought. Plaintiffs' request fails for the additional reasons that, besides not showing
exposure to irreparable harm, plaintiffs are not likely to succeed on the merits and
a balancing of the equities does not tip decidedly in plaintiffs' favor.

## **FACTUAL BACKGROUND**

The relevant facts at issue in this case are fully set forth in the Declaration of
Robert M. Pantle, Vice President of the Government Sales Directorate for
Remington dated May 29, 2008.

Briefly, on February 12, 2008, following extensive negotiations, Remington
and plaintiffs executed a Termination Agreement. The Termination Agreement
canceled the Distribution Agreement, "effective February 15, 2008." *See*
Termination Agmt. ¶ 1 (Pantle Decl. Exh D). The Termination Agreement
***"absolutely and irrevocably"*** abrogated the parties' respective obligations
pursuant to their former Distribution Agreement.[1] *See id.* at ¶ 11. The

---

[1] That Distribution Agreement, as amended, designated Remington as an authorized distributor
of Eyeball kits in the United States and its territories and Canada. *See* Pantle Decl. Exhs. A – C.

3

Termination Agreement states that "each of the parties hereby *releases and waives absolutely and irrevocably any demand, claim or right . . . in connection with the Distribution Agreement.*" *Id.* at ¶ 12 (emphasis added).

The Termination Agreement thus constitutes a "full, final and complete settlement and release of all demands, claims and rights that each party may have against the other, its shareholders, directors, employees, subsidiaries, affiliates or representatives . . . ." Termination Agmt. at ¶ 11 (Pantle Decl. Exh. D).  The Termination Agreement did not restate – and thus abandoned – the former "Territory" and "Market" limits contained in the Distribution Agreement.

When the Termination Agreement was executed, Remington already had in its possession 1,538 unsold Eyeball kits purchased from ODF.  The Termination Agreement provided Remington with two months to sell off the remaining inventory, with the deadline set at April 15, 2008.[2]  This was a four-month reduction of the former six-month sell-off window that Remington would have been afforded under the abandoned Distribution Agreement.

At the same time that ODF succeeded in reducing Remington's sell-off window down to two months, the parties removed the prior geographic and market restrictions.  Reflecting this, the Termination Agreement contains no territory or

---

[2]  Originally, the Distribution Agreement provided that Remington would have six months to sell remaining inventory in the event the agreement was terminated.  In negotiating the Termination Agreement, ODF bargained for a reduction from six months down to only two.  *See* Pantle Decl. ¶ 38.

market limitations, and merely states that all prior rights and claims under the Distribution Agreement are "absolutely and irrevocably" waived. Termination Agmt. ¶ 12 (Pantle Decl. Ehx. D). [3]

Remington sold its remaining units before the April 15 deadline. On April 14 – within the timeframe established by the Termination Agreement – Remington sold to Blue Star its final stock of 1,097 Eyeball units. Pursuant to the Sales and Service Agreement between Remington and Blue Star, full title to the Eyeball kits transferred to Blue Star on April 14. Remington is storing and maintaining the units pending resale by Blue Star, in compliance with the service provisions of the Blue Star Sales and Service Agreement. *See* Pantle Decl. ¶ 56. Remington has agreed to store the units in view of its superior facility for properly maintaining the units pending shipment. *See id.* [4]

ODF seeks to block Remington's shipment of the units sold to Blue Star on the ground that Remington was restricted in how it priced the units. As more fully set forth in the Pantle Declaration, no such price restriction exists, and Remington

---

[3] As Remington Vice President Pantle explains, even while not obligated to do so, Remington in fact sold its remaining inventory within the Territory and Market as defined in the terminated Distribution Agreement. *See* Pantle Decl. ¶ 29. This renders ODF's application "doubly" groundless: groundless as a matter of contract, since nothing restricted Remington's re-sales (except time), and groundless as a matter of fact, since Remington sold only within the Territory and Markets. As explained, even under the defunct Distribution Agreement, Remington's obligation was only to use its "best efforts" to "ensure" that its sub-distributors did not sell outside the Territory and Markets. This, Remington has done. *See* Pantle Decl. ¶ 50.

[4] This fact bears on ODF's unsubstantiated claim that the Eyeball units may not have been properly stored (*see* Declaration of Eran Tibon dated May 14, 2008 at ¶ 35). In truth and in fact, Remington has stored the units well, and they are in no way defective. *See* Pantle Decl. at ¶ 56.

had complete discretion to price its remaining inventory as it deemed appropriate. *See* Pantle Decl. at ¶¶ 36–43. Furthermore, ODF knew that Remington would sell off inventory at historically low prices, and this fact was expressly incorporated into the Termination Agreement. *See* Termination Agreement ¶ 8 (Pantle Decl. Exh. D) (relieving ODF of any warranty obligations on Remington sales below $2,500).

ODF also argues that Remington was not allowed to sell to a distributor, but again no such restriction was imposed under the Termination Agreement. And ODF argues that the sale to Blue Star was a sham, when in fact the sale was a bona fide transaction consummated before the April 15 deadline. Blue Star purchased the units outright and owns them today as a matter of law and fact.

For all the foregoing reasons and based on the legal principles described below, ODF's injunction application must be denied. To the extent expedited discovery is granted as ODF requests, then Remington ought to be permitted to obtain parallel discovery from ODF, within New York in the jurisdiction of this Court.

## ARGUMENT

### A.   <u>Standard for Preliminary Injunction</u>

In the Second Circuit, a preliminary injunction may only be granted where the moving party demonstrates the existence of "(a) irreparable harm and (b) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going

to the merits to make them a fair ground for litigation and a balance of hardships

tipping decidedly toward the party requesting the preliminary relief." *Jackson*

*Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979); *Morgan*

*Stanley & Co., Inc. v. Archer Daniels Midland Co.*, 570 F. Supp. 1529, 1533–34

(S.D.N.Y. 1983).

The *sine qua non* of injunctive relief is that the moving party will suffer

irreparable injury if the injunction is not granted. *See Gidatex, S.R.L. v.*

*Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998). An

"irreparable injury" is one for which monetary damages would not be adequate.

*Jackson Dairy, Inc.*, 596 F.2d at 72; *World Love Prods., Inc. v. Keepers Indus.,*

*Inc.*, 1993 WL 6591 *2 (1993) ("If a wrong can be redressed by a payment of

money, irreparable harm is not established and any request for preliminary

injunctive relief must be denied."). Irreparable injury typically exists where "but

for the grant of equitable relief, there is a substantial chance that upon final

resolution of the action the parties cannot be returned to the positions they

previously occupied." *Brenntag Chems. Inc. v. Bank of India*, 175 F.3d 245, 249

(2d Cir. 1999).

A preliminary injunction is an extraordinary remedy that should be granted

only in exceptional circumstances where the threat of irreparable injury to the

moving party is "actual and imminent, not remote and speculative." *See Forest*

*City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999);

*Lanvin Inc. v. Colonia, Inc.*, 739 F. Supp.182, 193 (S.D.N.Y. 1990) "It should

issue not upon a plaintiff's imaginative, worst case scenario of the consequences

flowing from the defendant's alleged wrong but upon a concrete showing of

imminent irreparable injury." *USA Network v. Jones Intercable, Inc.*, 704 F. Supp.

488, 491 (S.D.N.Y. 1989).

Because a successful plaintiff would be entitled to only compensatory

damages, injunctive relief is not generally available in breach of contract actions.

*See United Retail Inc. v. Main Street Mall Corp.*, 903 F. Supp. 12, 14 (S.D.N.Y.

1995) ("In the contract setting, injunctive relief is the exception and not the rule.");

*see also USA Network,* 704 F. Supp. at 491 (noting that the rule against awarding

injunctive relief in the contract setting "is so because the injury must be one

requiring a remedy of more than mere money damages.").

**B.    There Is No Danger that ODF Will Suffer
         "Imminent, Irreparable Injury"**

Despite the general proscription against awarding injunctive relief in breach

of contract actions, that is exactly what plaintiff seeks.  Plaintiff submits a single

statement from ODF's chief operating officer Eran Tibon, which statement consists

primarily of speculation and conjecture, claiming that it "will suffer tremendous

irreparable harm as a result of Remington's various violations of both the

Termination Agreement and the Distribution Agreement." *See* Declaration of Eran Tibon ¶ 34.

The Southern District has previously denied injunctions based exclusively on unsupported predictions. For example, in *Lanvin Inc.*, the plaintiff claimed that defendant's termination of the parties' distribution agreement would disrupt the plaintiff's sales and cause the plaintiff to lose customers. *See Lanvin Inc.*, 739 F. Supp. at 193. The court responded that conclusory allegations of irreparable injury through lost sales "without adequate evidence of how such losses would take place and how the movant would be injured thereby," did not justify an injunction. *See id.*; *see also Grand Light & Supply Co. v. Honeywell, Inc.*, 80 F.R.D. 699, 702 (D. Conn. 1978) (injunction denied where evidence of potential lost customers was essentially a prediction from plaintiff's principal). Similarly, in this case ODF is unable to point to any specific sales that it stands to lose in the absence of an injunction, or how those lost sales would impact its overall business.

ODF hints, without specifically stating, that Remington's completed sale to Blue Star, and its negligible sale of two units to Tactical Depot, might somehow take away from ODF's own sales. As more fully set forth in the Pantle Declaration, Remington sold only two units to Tactical Depot. Pantle Decl. ¶ 47. This *de minimus* number of sales to Tactical Depot (two) was totally compliant with the Termination Agreement. And even if it were not, still it would be patently

9

insufficient to justify an award of the extraordinary relief that ODF seeks. The

remaining units were either donated to law enforcement agencies, or sold to Blue

Star within the contractually agreed upon sell-off period.

Indisputably, throughout the term of the parties' formal Distribution

Agreement, which ended on February 12, 2008, Remington was free to sell to sub-

distributors and others. *See* Distribution Agmt. ¶ 1(b) ("Remington may appoint

any subdistributors or agents to promote, sell or distribute products[.]") (Pantle

Decl. Exh. A). The Termination Agreement did not abbreviate Remington's rights

in this regard – and in fact expanded them, eliminating even the Territory and

Market provisions of the former arrangement. ODF has failed to explain why

Remington's distribution to a well-known United States military equipment

supplier such as Blue Star, during the term of the parties' Distribution Agreement,

would ***not have caused*** irreparable injury, and yet that same conduct as of

April 14, 2008 somehow threatens ODF with "irreparable injury." The fact is that

nothing Remington has done threatens any harm to ODF monetarily or otherwise.

Indeed, in order for alleged threats to the continued viability of ODF's

business to rise to the level of "irreparable injury" sufficient to warrant imposition

of a preliminary injunction, Remington's conduct must be so egregious as to imperil

ODF's entire business. *See United Retail Inc.*, 903 F. Supp. at 14; *see also Roso-*

*Lino Distrib., Inc. v. Coca-Cola Bottling Co.,* 749 F.2d 124, 126 (2d Cir. 1984)

(granting a preliminary injunction where the plaintiff stood to lose its entire business). Plaintiff's application misses this mark dramatically. There is zero evidence that the number of Eyeball units at stake threaten plaintiff's operations.[5]

Applications for preliminary injunctions have been denied in situations where the challenged acts were predicted to have an even greater impact on a plaintiff's business than the vague evils conjectured here. Illustrative in this regard, in *Litho Prestige v. News Am. Pub'g, Inc.,* 652 F. Supp. 804, 807 (S.D.N.Y. 1986), the court denied the plaintiff's request to preliminarily enjoin the defendant from terminating an agreement between the parties pursuant to which the plaintiff was the exclusive printer of *New York Magazine*. In denying the injunction, the Court stated: "[I]t is not seriously contended that the loss of the *New York Magazine* printing business will threaten the ability of plaintiff to continue in business or even seriously cripple it." The court explained that injunctive relief in arbitrated contract cases is reserved for instances where the breach will cause plaintiff's business to close completely. *Id.*; *see also United Retail Inc.,* 903 F. Supp. at 14 (denying preliminary injunction where plaintiff failed to demonstrate that the breach jeopardized plaintiff's solvency or required substantial modification of its business plan).

---

[5] ODF does not even allege – nor could it honestly – that delivery of units to Blue Star will impair its ability to continue operating. That would be a far-fetched and insupportable claim.

ODF simply cannot show irreparable harm.  For this reason alone, its application must be denied.

## C.    ODF Is Not Likely To Succeed on Its Underlying Claims

Even assuming *arguendo* ODF could show irreparable harm (plainly it cannot), still ODF would not be entitled to an injunction because it is not able to meet the second prong of the *Jackson Dairy* test.  In addition to irreparable harm, the plaintiff seeking a preliminary injunction must also show either (1) a likelihood of success on the merits or (2) a balance of hardships tipping decidedly in favor of granting preliminary relief.  *Jackson Dairy, Inc.*, 596 F.2d at 72.  ODF's moving papers fail under either standard.

Remington has not breached the Termination Agreement, and thus it is far from "likely" that ODF will be entitled to monetary damages, let alone a permanent injunction, at the conclusion of this case.  The Termination Agreement permitted Remington to sell off its remaining inventory of Eyeball kits until April 15, 2008 — without restriction as to territory, geographic location or price. Remington completed the last sale of its inventory to Blue Star on April 14, within the deadline imposed by the Termination Agreement.  Thus, Remington did not breach the Termination Agreement.

ODF's allegation that certain sales completed after the effective date of the Termination Agreement violate provisions of the original Distribution Agreement

is completely baseless. Plaintiff's argument is based upon the erroneous premise

that the July 2004 Distribution Agreement remains in effect. In fact, the

Termination Agreement, by its express terms, *"absolutely and irrevocably"*

waived all rights and claims under the Distribution Agreement. *See* Termination

Agmt. ¶ 12 (Pantle Decl. at Exh. D). The Termination Agreement states as well

that the Distribution Agreement was terminated "effective February 15, 2008,"

voiding all restrictions on Remington's ability to sell off its remaining inventory.

*See id.* ¶ 1.

Going further, the reality is that Remington did in fact sell its remaining

inventory within the Territory and Market contemplated by the now dead

Distribution Agreement (even though Remington was not required to do so). *See*

Pantle Declaration, ¶ 29. Notable in this regard, even under the defunct

Distribution Agreement, Remington was obligated only to use its "best efforts" to

ensure that any of its subdistributors resold within the designated Territory and

Markets. A sale by any of Remington's subdistributors outside the specified area

or fields would arguably not even rise to the level of a contract violation, let alone

constitute sufficient predicate for the award of injunctive relief. And here,

Remington was not even bound by the relatively loose "best efforts" provision of

the abandoned Distribution Agreement, which ceased having effect as of

February 12, 2008. Thus, Remington's sale to Blue Star was strictly in accord with

even the tighter provisions of the Distribution Agreement, which Remington was not bound to follow as of April 14, 2008.

ODF's patent and trademark infringement claims, which are addressed only in passing in plaintiff's moving papers, are also flawed and unlikely to survive a dismissal motion. ODF's claim that Remington is infringing on ODF's patents is wholly undone by the first sale doctrine. Under the first sale doctrine, a seller of a patented item, such as the Eyeball units, is deemed to relinquish to a bona fide first purchaser any rights to the patented item. *See Innomed Labs, LLC v. Alza Corp.*, 368 F.3d 148, 161 (2d Cir. 2004); *see also Kitty Walk Systems, Inc. v. Midnight Pass Inc.*, 431 F. Supp. 2d 306, 310 (E.D.N.Y. 2006) ("Under the 'first sale' doctrine, a patent owner who transfers his goods to another has given up any right to restrict the re-sale of those goods to a consumer."); *Forest Labs., Inc. v. Abbott Labs.*, 1999 WL 33299123 * 22–23 (W.D.N.Y. 1999), *aff'd* 239 F.3d 1305 (recognizing that a patent holder surrenders its monopoly by selling the patented product). Thus, by selling its Eyeball kits to Remington, ODF relinquished any future claim that Remington was violating its patent rights.

The first sale doctrine is equally applicable in the trademark context, and defeats ODF's claims there as well.[6] The Second Circuit has held that a distributor who resells branded goods is not an infringer and thus needs no license:

---

[6] Indeed, if the terms of the original Distribution Agreement continue to exist as ODF argues, various provisions of that agreement and the first amendment provide Remington the right to use

> As a general rule, trademark law does not reach the sale
> of genuine goods bearing a true mark even though the
> sale is not authorized by the mark owner. . . Thus, a
> distributor who resells trademarked goods without
> change is not liable for trademark infringement.

*Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61–62 (2d Cir. 1992) (*citing*

McCarthy on Trademarks § 25:41)); *see also Cutler-Hammer, Inc. v. Universal*

*Relay Corp.*, 285 F. Supp. 636 (S.D.N.Y. 1968).

In short, both on its contract claims and its federal patent and trademark

claims, ODF has failed to demonstrate a likelihood of success.

**D.    A Balancing of the Equities Does Not Tip Decidedly in ODF's Favor**

ODF cannot prevail under the alternative second prong of *Jackson Dairy*, as

the equities here do not tip decidedly in ODF's favor.  Remington paid upwards of

$3.8 million for the 1,097 units sold to Blue Star.  Remington originally requested

that ODF take back the stock, during negotiation of the parties' Termination

Agreement.  ODF refused, and instead bargained for the shortened, unrestricted

sell-off.  *See* Pantle Decl. ¶¶ 2, 41.  The so-called "fire sale" that ODF is now

complaining about resulted from ODF's own bargaining position, making it

inequitable for ODF to try to block the very sales it sought.  Indeed, Remington

would suffer the greater hardship if an injunction were issued, compared to any ill

that might flow to ODF without one.  If ODF's application for an injunction is

---

ODF's trademarks in reselling the units. *See* Distribution Agmt. at ¶¶ 1(d) and 13, and First
Amendment at ¶ 1 (Pantle Decl. Exhs. A and B).  Thus, even in plaintiffs' view of the world,
their trademark infringement claim is baseless.

granted, Remington will be left holding several millions of dollars of inventory. *See Litho Prestige*, 652 F. Supp. at 810. Moreover, Remington's reputation and goodwill with Blue Star would be impaired immeasurably by non-delivery of the fully sold goods. The expectations and safety of Remington's customers, which include federal and state law enforcement agencies and the military, are a worthy and necessary consideration in the overall equitable analysis.

In sum, the balancing of the equities does not tip decidedly in ODF's favor. Indeed, in view of the negotiations leading up to the parties' Termination Agreement, and in particular the abbreviated sell-off period imposed on Remington, the equities tip against ODF altogether.

## E.    Expedited Discovery Is Not Warranted, and if Allowed, Must Proceed Mutually Within New York

There is no basis for expedited discovery. As Remington has explained, all information germane to plaintiffs' claims has been disclosed already. We have attached as Exhibit G to the Pantle Declaration a full summary of all sales activity following the execution of the parties Termination Agreement. There is no other information that plaintiffs can legitimately claim to need on an expedited basis. To the extent that discovery does proceed in an expedited fashion, then it ought to be conducted mutually, with both sides taking discovery of each other, within New York in the jurisdiction of the Court.

## CONCLUSION

Plaintiffs' application for a preliminary injunction preventing shipment of the units sold to Blue Star is totally unwarranted. Remington sold the units in reliance on the parties' Termination Agreement, and within that Agreement's clear terms. Plaintiffs' case is so deficient that plaintiffs cannot possibly demonstrate a likelihood of success on the merits, neither as to their contract claim nor as to their patent and trademark claims, which are barred under the first sale doctrine. The equities here tip decidedly against ODF, and certainly not in ODF's favor. Thus, ODF's application must be denied. Expedited discovery is not warranted, but if it does proceed, it should proceed in parallel for both sides, within New York in the jurisdiction of the Court.

Dated:    Uniondale, New York
          May 30, 2008

                                RUSKIN MOSCOU FALTISCHEK, P.C.

                          By:   Mark S. Mulholland
                                Matthew F. Didora
                                *Attorney for Defendant*
                                Remington Arms Company, Inc.
                                1425 RexCorp Plaza
                                Uniondale, New York 11556
                                (516) 663-6600

17

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew F. Didora, hereby certify that on May 30, 2008, I caused to be served a true copy of the annexed **Memorandum of Law in Opposition to Plaintiffs' Request for a Preliminary Injunction**, by ECF filing same with the Clerk of the Court and served in accordance with the Eastern District rules on electronic service **and** by e-mail sent to the address provided by the parties set forth after each name:

      Joel S. Schneck
      Goldberg & Rimberg PLLC
      115 Broadway, Suite 302
      New York, NY  10006
      (212) 697-3250
      jss@grlpllc.com

      Matthew F. Didora
      *Attorney for Defendant*
      Remington Arms Company, Inc.
      Ruskin Moscou Faltischek, P.C.
      1425 RexCorp Plaza
      Uniondale, New York 11556
      (516) 663-6600