## CERTIFICATE OF SERVICE

I, Matthew F. Didora, hereby certify that on August 15, 2008, I caused to be served a true copy of the annexed NOTICE OF MOTION AND MOTION TO DISMISS COUNT VIII OF PLAINTIFFS' COMPLAINT, to be filed with the Clerk of the Court and served in accordance with the Eastern District rules, by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following person at the last known address set forth:

GOLDBERG & RIMBERG, PLLC
Joel S. Schneck, Esq.
115 Broadway, 3rd Floor
New York, New York 10006
Attorneys for Plaintiffs

Dated:  August 15, 2008
        Uniondale, New York

Matthew F. Didora
Ruskin Moscou Faltischek, P.C.
1425 RexCorp Plaza
Uniondale, New York 11556
(516) 663-6600

Mark S. Mulholland
Matthew F. Didora
RUSKIN MOSCOU FALTISCHEK, P.C.
East Tower, 15th Floor
1425 RexCorp Plaza
Uniondale, New York 11556-1425
Phone:  (516) 663-6600

John F. Morrow, Jr. – *pro hac vice*
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
One West Fourth Street
Winston-Salem, North Carolina 27101
Phone:  (336) 721-3584

*Attorneys for Defendant*
*Remington Arms Company, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

**O.D.F. OPTRONICS LTD. and**
**WAVE GROUP LTD.**

                               **Plaintiffs,**      **Case No. 08-CV-4746(DLC/DFE)**

      **- against -**

**REMINGTON ARMS COMPANY, INC., ET AL.,**

                               **Defendants.**

-----------------------------------------------------------X

### AFFIRMATION IN SUPPORT OF DEFENDANT REMINGTON'S
### MOTION TO DISMISS PLAINTIFF'S EIGHTH CAUSE OF ACTION

Matthew F. Didora, under penalty of perjury, affirms as follows:

1.      I am an attorney admitted to practice law in the State of New York and am

an associate of the law firm Ruskin Moscou Faltischek, P.C., counsel for defendant

Remington Arms Company, Inc.  I submit this affirmation in support of Remington's motion to dismiss plaintiff's Eighth Cause of Action.

2.      My knowledge of the facts contained in this Affirmation is based upon my review of the facts, pleadings, and papers submitted in this action and, in some instances, my personal knowledge.

3.      A true and correct copy of plaintiff's Complaint is attached as Exhibit A.

4.      A true and correct copy of defendant Remington's Answer is attached as Exhibit B.

Dated: August 15, 2008
       Uniondale, New York 11556

_____
                Matthew F. Didora



08 CV 4746

Robert L. Rimberg, Esq. (RLR2453)
Joel S. Schneck, Esq. (JSS7019)
GOLDBERG & RIMBERG, PLLC
115 Broadway – 3rd Floor
New York, New York 10006
Phone: (212)697-3250
*Attorneys for Plaintiffs*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

O.D.F. OPTRONICS LTD. and
WAVE GROUP LTD.

                 Plaintiffs,

     -against-

REMINGTON ARMS COMPANY, INC.,
MIGUEL PEREZ d/b/a TACTICAL DEPOT
And John Does 1-10 (XXX)

              Defendants.

------------------------------------------------------X

Docket No.

Jury Trial Demanded

## COMPLAINT

     Plaintiffs, O.D.F. OPTRONICS LTD. (ODF) and WAVE GROUP LTD. (Wave)

(collectively referred to as the "Plaintiffs"), as and for its complaint of patent infringement,

trademark infringement and unfair business practices against the defendants, REMINGTON

ARMS COMPANY, INC. ("Remington") and MIGUEL PEREZ d/b/a TACTICAL DEPOT

("Perez"), (collectively referred to as the "Defendants") allege as follows:

## PARTIES

     1.     ODF is a foreign corporation based in Israel which creates technologies that

utilize optics to enhance surveillance in urban settings.

2.    Wave is a foreign corporation based in Israel which is ODF's parent corporation.

3.    Upon information and belief, defendant Remington is a Delaware corporation with its principal place of business located at 870 Remington Drive, Madison, North Carolina.

4.    Upon information and belief, defendant Miguel Perez ("Perez") is an individual residing in the state of California doing business as Tactical Depot, with his principal place of business located at 608 East First Street, Los Angeles, California.

## NATURE OF ACTION

5.    This is an action for: (i) patent infringement pursuant to 35 U.S.C. § 271 et seq.; (ii) breach of contract; and related claims arising out of defendant's unlawful sale of the "Eyeball R1 Surveillance System" ("Eyeball"). As a direct consequence of defendant's wrongful conduct, plaintiffs have been directly and irreparably injured because defendants are deliberately trading on plaintiffs' patents and the goodwill associated with them. This action seeks to stop defendants before they causes further injury.

## JURISDICTION AND VENUE

6.    This court has jurisdiction over this action under the patent laws of the United States, 15 U.S.C. § 1121, 35 U.S.C. §§ 271 and 281-285. Subject matter jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1338(a) and 1367(a).

7.    Venue is proper in this Court under 28 U.S.C. §§ 1391(b), 1391(c) and/or 1400(b).

8.    Venue is proper in this Court because Plaintiffs and Defendant Remington are parties to an agreement containing a forum selection clause naming this Court as the exclusive forum of any suits or actions arising out of it. This suit arises out of such agreement.

2

9.      Plaintiffs and Defendant Remington are parties to an agreement containing a clause that expressly states that said agreement shall be governed by and in accordance with the laws of the State of New York and the United States without regard to conflict of laws rules.

## BACKGROUND

10.     ODF is best known for its Eyeball, which consists of a hardened sphere that houses a sophisticated camera system and comes with a wireless display unit. The durable Eyeball can be thrown over walls, into streets, tunnels, houses or any other place of interest.

11.     Once the sphere hits the ground, it establishes a 360-degree video image of the surrounding area and feeds it to operators holding the small display unit.

12.     The Eyeball also features audio sensors as well as sensors which distinguish between daytime and nighttime.

### Intellectual Property

13.     The Eyeball has unique characteristics covered by various patents, including two United States Patents registered to ODF.

14.     One of the patents registered to ODF is number 7,253,969, "Spherical and nearly spherical view imaging assembly" (the "969 Patent"). The other Eyeball patent is number 7,362,516, "Optical lens providing omni-directional coverage and illumination" (the "516 Patent").

15.     ODF has also registered the "Eye Ball" mark with the United States Patent and Trademark Office, Serial Number 78535193.

**ODF's Accolades and Good Will**

16.    Since its release, the Eye Ball has garnered many accolades and awards as well as

an impeccable reputation in its market.

17.    The Eye Ball has been well received and used by the Israeli Ministry Of Defense,

the United States Armed Forces, as well as other NATO armed forces.  The Eye Ball has won:

(a) the United States Police Force's "Most Innovative Tactical Product of the Year" (2006), (b)

the Israel Defense Force (IDF)'s Creative Thinking Award (2006), and (c) The 2007 Frost &

Sullivan EMEA Excellence in Technology Award in the field of digital imaging.

**The Distribution Agreement**

18.    On July 19, 2004 ODF entered into a Distribution Agreement with defendant

Remington.  The Distribution Agreement was amended on September 11, 2005 and again on

November 23, 2006.  Pursuant to the Distribution Agreement, and subject to the terms and

conditions contained therein, ODF appointed Remington as the "exclusive distributor of Products

in the Markets located in the Territory for the term of" the Agreement.  The Eyeball was

included in the Products defined in the Distribution Agreement.

19.    The Distribution Agreement provided that "Remington may appoint any

subdistributors or agents to promote, sell or distribute Products in the markets within the

Territory and shall use its best efforts to ensure that such subdistributors or agents perform their

duties consistent with terms of this Agreement."

20.    The Distribution Agreement further states "Remington shall not advertise,

promote, solicit sales or sell any of the Products outside of the Markets and outside of the

Territory.  Remington will use its best efforts to ensure that its distributors or agents sell

Products only in the Markets within the Territory."

21.    The Territory is defined as: United States and its territories and possessions (which include American Samoa, Baker Island, Guam, Howland Island, Jarvis Island, Johnston Atoll, Kingman Reef, Midway Islands, Navassa Island, Northern Mariana Islands, Palmyra Atoll, Puerto Rico, Virgin Islands, and Wake Island); Canada.

22.    The defined Market in the Distribution Agreement makes it clear that Remington can only sell to end-users for use in the military markets.  This means that Remington was required to either sells directly to the end-users or to a sub-distributor in that market.

23.    The parties performed pursuant to the Distribution Agreement from 2004 through 2007.  By letter dated November 8, 2007 from Robert M. Pantle, Vice President of Remington, expressing Remington's desire to terminate the Distribution Agreement.

24.    By agreement dated February 15, 2008, ODF, Wave, and Remington entered into a Termination, Settlement and Release Agreement of the Distribution Agreement (the "Termination Agreement").

25.    Pursuant to the Termination Agreement "Remington must complete all sales of existing Products, Units, spare parts and demo systems in its inventory ("Existing Inventory") by no later than April 15, 2008 and shall not be entitled to sell, promote or distribute any Existing Inventory after that date."

26.    The Termination Agreement provides "ODF will assume all warranty claims from Remington, and will provide all warranty and service obligations on its existing terms for all Units or Products that have been sold by Remington through April 15, 2008, at a customer's sales price of at least $2,500 per unit."

27.    In his letter, Mr. Pantle acknowledged that Remington had 1,670 Eyeball kits in its inventory.

28.     Remington subsequently provided a spreadsheet which showed that between November 8, 2007 and March 24, 2008, it had shipped approximately 131 Eyeball kits. As a result, Remington still had approximately 1539 Eyeball kits in its possession as of March 24, 2008.

## COUNT I

### Patent Infringement

29.     Paragraphs 1-28 above, inclusive, are hereby incorporated herein by reference.

30.     Defendants have used, sold or offered to sell, and will continue to use, sell or offer to sell, the Eyeball, infringing each of the elements of one or more claims of ODF's Patents, without license from ODF, in this judicial district and elsewhere throughout the United States.

31.     By using, selling, and/or offering for sale the Eyeball, Defendants have directly and contributorily infringed, and will continue to directly and contributorily infringe, one or more claims of the '916 Patent under 35 U.S.C. § 271 (a), (b), (c), and/or (f), literally and/or under the doctrine of equivalents.

32.     By making, using, selling, and/or offering for sale the Eyeball, Defendants have induced infringement of, and will continue to induce infringement of, one or more claims of the '569 Patent under 35 U.S.C. § 271 (b), and/or (f), literally and/or under the doctrine of equivalents.

33.     On information and belief, Defendants' infringement of ODF's Patents has been and continues to be willful and deliberate.

34.     As a direct and proximate consequence of the acts and practices of Defendants, Plaintiff has been, is being and, unless such acts and practices are enjoined by the Court, will

6

continue to be injured in its business and property rights, and has suffered, is suffering, and will continue to suffer injury and damages for which it is entitled to relief under 35 U.S.C. § 284.

35.    As a direct and proximate consequence of its acts and practices, Defendants have also caused, is causing and, unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to ODF for which there is no adequate remedy at law, and for which ODF is entitled to injunctive relief under 35 U. S. C. § 283.

36.    Plaintiffs have no adequate remedy at law.

## COUNT II

### Trademark Infringement In Violation Of 15 U.S.C. §1114

37.    Plaintiffs repeat and reallege paragraphs 1 through 36 as if set forth in full herein

38.    Defendant has intentionally, knowingly and willfully infringed on the ODF's Marks by selling Eyeballs in the United States with a mark that is an infringement of the ODF Marks.

39.    Defendant's sales of products described in the preceding paragraph have caused, and are likely to continue to cause, confusion or mistake or to deceive and, in particular, tend to and do falsely create the impression that the products sold by defendant are authorized, sponsored or approved by ODF, when in fact they are not.

40.    By reason of the foregoing, defendant has infringed ODF's Marks in violation of 15 U.S.C. §1114.

41.    By reason of the foregoing, plaintiffs have suffered, and are continuing to suffer, irreparable harm and damage, including a diversion of sales from them to defendant and a loss of goodwill.

42.    Plaintiffs have no adequate remedy at law.

## COUNT III

### Breach Of Contract

43.    Plaintiffs repeat and reallege paragraphs 1 through 42 as if set forth in full herein.

44.    ODF has learned that Remington has breached and continues to breach the provisions of the Termination Agreement causing ODF irreparable harm.

45.    Upon information and belief, Remington approached at least two parties prior to April 15, 2008 and offered to give them, free of charge at that time, the entire remaining inventory of products, with payment to be made only if and when such third parties should sell the stock onwards.

46.    By letter dated May 7, 2008, an agent of Remington acknowledged that Remington has entered into a transaction with Blue Star Consortium, Inc. ("Blue Star") and that while Remington "reached full terms for the sale of some its inventory to Blue Star", "[t]he inventory was not given to Blue Star."

47.    Pursuant to the Termination Agreement, Remington cannot now distribute the inventory to Blue Star.

48.    The Termination Agreement required that by "March 15, 2008, Remington shall provide ODF with its existing customer list and any new customer information that may be obtained during future sales of existing inventory."

49.    While Remington provided such list, Blue Star's information was not contained therein.

8

50.    By engaging in sales where they are effectively "parking" the inventory with third-parties, such as Blue Star, Remington is attempting to circumvent the Termination Agreement.

51.    Upon information and belief, Remington has sold Eyeballs to defendant Perez.

52.    Upon information and belief Remington charged Perez an average price of about $2,200.00 per Eyeball unit.

53.    ODF "market price" which it has established for the Eye Balls kits is $4,800.00

54.    Remington, by effectively engaging in a "fire sale," has breached the Termination Agreement

55.    As a result of Remington's breach of contract, Plaintiffs have been damaged in an amount to be determined at trial but in no event less than $10,000,000.00 together with interest thereon.

## COUNT IV

### Anticipatory Breach

56.    Plaintiffs repeat and reallege paragraphs 1 through 55 as if set forth in full herein.

57.    Remington and Plaintiffs are parties to an executed Termination Agreement.

58.    Upon information and belief, Remington continues market Eyeballs.

59.    Plaintiffs have been ready, willing and able to abide by the terms of the Termination Agreement.

60.    As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined, but believed to be at least $10,000,000.00.

9

## COUNT V

### Unjust Enrichment

61.    Plaintiffs repeat and reallege paragraph 1 through 60 as if set forth in full herein.

62.    Remington has been unjustly enriched by continuing to sell and market Eyeballs in violation of the Termination Agreement.

63.    As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined, but believed to be at least $10,000,000.00.

## COUNT VI

### Accounting

64.    Plaintiffs repeat and reallege paragraph 1 through 63 as if set forth in full herein.

65.    Upon information and belief, Remington has retained and/or caused to be diverted to itself sums of money properly belonging to Plaintiffs, the amount of which is unknown at this time to the Plaintiffs.

66.    Plaintiffs seek an accounting in order for it to identify, quantify and recover any and all money that has been wrongfully retained or diverted by Remington and belonging to the Plaintiffs.

67.    Remington has failed to account for the monies that have been wrongfully retained or diverted by Remington and belonging to the Plaintiffs.

68.    Plaintiffs have no adequate remedy at law.

## COUNT VII

### Permanent Injunction

69.    Plaintiffs repeat and reallege paragraphs 1 through 68 as if set forth in full herein.

70.    Defendants' blatant breach of contract will cause irreparable harm to Plaintiffs.

71.    As a result of the terms of the Termination Agreement, it is demanded that

Defendants be permanently enjoined from selling promoting or distributing the Eyeball.

## COUNT VIII

### Breach Of Covenant Of Good Faith And Fair Dealing

72.    Plaintiffs repeat and reallege paragraphs 1 through 71 as if set forth in full herein.

73.    Remington seeks to prevent performance of the Termination Agreement or

withhold its benefit to the Plaintiffs by (i) selling the Eyeball after April 15, 2008, in violation of

the Termination Agreement; (ii) selling the Eyeball below ODF's "market price"; (iii) knowingly

selling the Eyeball to parties that will resell and/or redistribute the Eyeball upon delivery in

violation of the Distribution Agreement and/or the Termination Agreement.

74.    As a result of the foregoing, Plaintiffs have been damaged in an amount to be

determined, but believed to be at least $10,000,000.00.

## COUNT IX

### Tortious Interference With Contractual Relations

75.    Plaintiffs repeat and reallege paragraphs 1 through 74 as if set forth in full herein.

76.    Plaintiffs and Remington have an agreement in the form of the Distribution

Agreement and/or Termination Agreement.

77.    Upon information and belief, Blue Star is aware of the Distribution Agreement

and/or the Termination Agreement between Plaintiffs and Remington.

78.    Upon information and belief, Blue Star continues to purchase the Eyeball from

Remington knowing that Remington is prohibited from selling the Eyeball pursuant to the

11

Termination Agreement.

79.    Upon information and belief, Remington has sold the Eyeball to Blue Star in violation of the Distribution Agreement and/or Termination Agreement.

80.    Upon information and belief, Perez is aware of the Distribution Agreement and/or Termination Agreement between Plaintiffs and Remington.

81.    Upon information and belief, Perez continues to purchase the Eyeball from Remington knowing that Remington is prohibited from selling the Eyeball pursuant to the Termination Agreement.

82.    Upon information and belief, Remington has sold the Eyeball to Perez in violation of the Distribution Agreement and/or the Termination Agreement.

83.    As a result of the foregoing, Plaintiffs have been damaged in an amount to be determined, but believed to be at least $10,000,000.00.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the entry of a judgment from this Court:

a.   Declaring that Defendants have directly infringed, contributorily infringed, and/or iuced infringement of one or more claims of Plaintiff's patents;

b.   Declaring that Defendants have willfully infringed one or more claims of the Plaintiff's patents

c.   Deeming this to be an "exceptional" case within the meaning of 35 U.S.C. § 285, entitling Plaintiff to an award of its reasonable attorney fees, expenses and costs in this action;

d.   Preliminarily and permanently enjoining Defendants and their respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation

with them who receive actual notice of the order by personal service or otherwise, from

committing further acts of infringement under 35 U.S.C. § 271 of any one or more claims

of the Crease Free Combination Hanger Patent pursuant to 35 U.S.C. § 283;

e.  Awarding Plaintiff damages in accordance with 35 U.S.C. § 284;

f.  Awarding Plaintiff damages on its 15 U.S.C. § 1125(a) claim;

g.  Awarding Plaintiff damages on its Common Law Trademark and Unfair

Competition claim;

h.  Awarding Plaintiffs damages on their breach of contract claim;

i.  Awarding Plaintiffs damages on their anticipatory breach claim;

j.  Awarding Plaintiffs an accounting of Remington's books and records with respect to

Plaintiff's products;

k.  Awarding Plaintiffs a permanent injunction against Remington selling, promoting,

distributing or otherwise transferring any of Plaintiffs' products;

l.  Awarding Plaintiffs damages on their breach of covenant of good faith and fair dealing

claim;

m.  Awarding Plaintiffs damages on their tortuous interference with contract claim; and

n.  Such other and further relief as to this Court seems just and proper.

Dated:    New York, New York
          May 20, 2008

                              GOLDBERG & RIMBERG, PLLC


                              By:
                              Joel S. Schneck (jss7019)
                              Robert L. Rimberg (rlr2453)
                              Attorneys for Plaintiff

                              13

115 Broadway, 3rd Floor
New York, New York 10006
(212) 697-3250

14

Mark S. Mulholland
Matthew F. Didora
RUSKIN MOSCOU FALTISCHEK, P.C.
East Tower, 15th Floor
1425 RexCorp Plaza
Uniondale, New York 11556-1425
Phone: (516) 663-6600

John F. Morrow, Jr. – *pro hac vice*
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
One West Fourth Street
Winston-Salem, North Carolina 27101
Phone: (336) 721-3584

*Attorneys for Defendant*
*Remington Arms Company, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

**O.D.F. OPTRONICS LTD. and**
**WAVE GROUP LTD.,**

                     **Plaintiffs,**           **Case No. 08-CV-4746 (DLC/DFE)**

       - against -

**REMINGTON ARMS COMPANY, INC.,**
**MIGUEL PEREZ d/b/a TACTICAL DEPOT**
**and Does 1-10 being defendants whose names**
**are currently unknown but are engaged in the**
**wrongdoing alleged in the complaint herein,**

                     **Defendants.**

-----------------------------------------------------------X

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant Remington Arms Company, Inc. ("Remington"), through undersigned

counsel, hereby Answers Plaintiffs' Complaint as follows without prejudice to Remington's

pending motion to dismiss Count VIII of Plaintiffs' Complaint:

**PARTIES**

1.    Remington is without sufficient information to admit or deny the allegations of paragraph 1 of the complaint, and therefore denies same.

2.    Remington is without sufficient information to admit or deny the allegations of paragraph 2 of the complaint, and therefore denies same.

3.    Admitted.

4.    Remington is without sufficient information to admit or deny the allegations of paragraph 4 of the complaint, and therefore denies same.

**NATURE OF ACTION**

5.    Remington admits that this purports to be an action for patent infringement, breach of contract, and related claims.  Except as expressly admitted, Remington denies the allegations of paragraph 5 of the complaint.

**JURISDICTION AND VENUE**

6.    Denied.

7.    Denied.

8.    Denied.

9.    Denied.

**BACKGROUND**

10.    Remington is without sufficient information to admit or deny the allegations of paragraph 10 of the complaint, and therefore denies same.

11.    Remington admits that ODF represents that once the Eyeball sphere hits the ground, it establishes a 360-degree video image of the surrounding area and feeds it to operators holding the small display unit.

12.    Remington admits that ODF represents that the Eyeball features audio sensors as well as sensors which distinguish between daytime and nighttime.

**Intellectual Property**

13.    Remington is without sufficient information to admit or deny the allegations of paragraph 13 of the complaint, and therefore denies same.

14.    Remington is without sufficient information to admit or deny the allegations of paragraph 14 of the complaint, and therefore denies same.

15.    Remington is without sufficient information to admit or deny the allegations of paragraph 15 of the complaint, and therefore denies same.

**ODF's Accolades and Good Will**

16.    Remington is without sufficient information to admit or deny the allegations of paragraph 16 of the complaint, and therefore denies same.

17.    Remington is without sufficient information to admit or deny the allegations of paragraph 17 of the complaint, and therefore denies same.

**The Distribution Agreement**

18.    Remington admits that on July 19, 2004, it entered into a Distribution Agreement with ODF, which was subsequently twice amended.  The terms of the Distribution Agreement and amendments speak for themselves, and Remington incorporates same herein by reference for purposes of providing any prior agreement was between Remington and ODF.

19.    The terms of the Distribution Agreement and amendments speak for themselves, and Remington incorporates same herein by reference for purposes of providing any prior agreement between Remington and ODF.

20.    The terms of the Distribution Agreement and amendments speak for themselves, and Remington incorporates same herein by reference for purposes of providing any prior agreement between Remington and ODF.

21.    The terms of the Distribution Agreement and amendments speak for themselves, and Remington incorporates same herein by reference for purposes of providing any prior agreement between Remington and ODF.

22.    The terms of the Distribution Agreement and amendments speak for themselves, and Remington incorporates same herein by reference for purposes of providing any prior agreement between Remington and ODF.

23.    Remington admits that the parties operated pursuant to the Distribution Agreement, as amended, from 2004-2007, and that the parties mutually decided to terminate that agreement in February 2008.  Except as expressly admitted, Remington denies the allegations of paragraph 23 of the complaint.

24.    Remington admits that the parties entered into a Termination, Settlement and Release Agreement on February 12, 2008.  Except as expressly admitted, Remington denies the allegations of paragraph 24 of the complaint.

25.    The terms of the Termination, Settlement and Release Agreement speak for themselves, and Remington incorporates same herein by reference for purposes of demonstrating the scope of such agreement.

26.    The terms of the Termination, Settlement and Release Agreement speak for themselves, and Remington incorporates same herein by reference for purposes of demonstrating the scope of such agreement.

27.    Remington admits that in his November 8, 2007 letter, Mr. Pantle conveyed that it had 1,670 units in inventory.

28.    Remington admits that it provided a spreadsheet showing shipments of approximately 131 Eyeball kits.  Except as expressly admitted, Remington denies the allegations of paragraph 28 of the complaint.

## COUNT I

### Patent Infringement

29.    Remington incorporates by reference all of the allegations set forth in paragraphs 1-28 above.

30.    Denied.

31.    Denied.

32.    Denied.

33.    Denied.

34.    Denied.

35.    Denied.

36.    Denied.

## COUNT II

### Trademark Infringement

37.    Remington incorporates by reference all of the allegations set forth in paragraphs 1-36 above.

38.    Denied.

39.    Denied.

40.    Denied.

41.    Denied.

42.    Denied.

## COUNT III

### Breach of Contract

43.    Remington incorporates by reference all of the allegations set forth in paragraphs 1-42 above.

44.    Denied.

45.    Denied.

46.    Remington admits that on May 7, 2008, Robert Pantle sent ODF a letter that stated, among other things, that Remington reached full terms for the sale of some of its inventory to Blue Star, and that the inventory was not given to Blue Star.

47.    Denied.

48.    The terms of the Termination, Settlement and Release Agreement speak for themselves, and Remington incorporates same herein by reference for purposes of demonstrating the scope of such agreement.

49.    Admitted.

50.    Denied.

51.    Denied.

52.    Denied.

53.    Denied.

54.    Denied.

55.    Denied.

## COUNT IV

### Anticipatory Breach

56.    Remington incorporates by reference all of the allegations set forth in paragraphs 1-55 above.

57.    Admitted.

58.    Denied.

59.    Denied.

60.    Denied.

## COUNT V

### Unjust Enrichment

61.    Remington incorporates by reference all of the allegations set forth in paragraphs 1-60 above.

62.    Denied.

63.    Denied.

## COUNT VI

### Accounting

64.    Remington incorporates by reference all of the allegations set forth in paragraphs 1-63 above.

65.    Denied.

66.    Remington admits that ODF is seeking an accounting, but denies that ODF is entitled to any such accounting.

67.    Denied.

68.    Denied.

## COUNT VII

### Permanent Injunction

69.     Remington incorporates by reference all of the allegations set forth in paragraphs 1-68 above.

70.     Denied.

71.     Denied.

## COUNT VIII

### Breach of Covenant of Good Faith and Fair Dealing

72.     Remington incorporates by reference all of the allegations set forth in paragraphs 1-71 above.

73.     Denied.

74.     Denied.

## COUNT IX

### Tortious Interference with Contractual Relations

75.     Remington incorporates by reference all of the allegations set forth in paragraphs 1-74 above.

76.     Remington admits that it and ODF/Wave are parties to the Termination Agreement, which supersedes the Distribution Agreement.

77.     Upon information and belief, Blue Star is aware of the Termination Agreement and Distribution Agreement.

78.     Denied.

79.     Denied.

80.    Remington is without sufficient information to admit or deny the allegations of paragraph 80 of the complaint, and therefore denies same.

81.    Denied.

82.    Denied.

83.    Denied.

## AFFIRMATIVE DEFENSES

Further, Remington asserts the following defenses and states:

### First Affirmative Defense

84.    The Complaint fails to state a claim for which relief can be granted within the meaning of Rule 12(b)(6) of the Federal Rules of Civil Procedure and New York law on several of Plaintiffs' purported claims.

### Second Affirmative Defense

85.    Plaintiffs have failed to adequately plead the elements necessary to sustain the asserted causes of action, and those causes of action should therefore be dismissed.

### Third Affirmative Defense

86.    Plaintiffs' claims are barred by the doctrine of unclean hands.

### Fourth Affirmative Defense

87.    If Plaintiffs' interpretation of the Termination Agreement is accepted, there was no meeting of the minds sufficient to form such an agreement between the parties.

### Fifth Affirmative Defense

88.    Plaintiffs' patent and trademark claims are barred by the first sale and related doctrines and by initiating this action Plaintiffs have engaged in patent misuse and vexatious litigation.

### Sixth Affirmative Defense

89.    The claims of Plaintiffs' purported patents are invalid for failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103, 112, and/or other applicable provisions of the Patent Laws.

### Seventh Affirmative Defense

90.    Plaintiffs have failed to mitigate any alleged damages.

### Eighth Affirmative Defense

92.    One or more of Plaintiffs' claims are time barred by applicable statutes of limitation.

### Ninth Affirmative Defense

93.    Plaintiffs' alleged claims are barred, either in whole or in part, by operation of the principles of waiver, equitable estoppel, acquiescence, or laches.

### Tenth Affirmative Defense

94.    Plaintiffs lack standing to assert some of the claims contained in the Complaint.

### Eleventh Affirmative Defense

95.    Remington does not make, use, offer for sale or sell, and has not made, used, offered for sale or sold in the United States any products that infringe, either literally or under the doctrine of equivalents, any valid and enforceable claim of Plaintiffs' purported patents, either directly or indirectly, contributorily or otherwise, and Remington has not induced any others to infringe those patents.

## Twelfth Affirmative Defense

96.    ODF failed to perform all duties under the Termination Agreement regarding warranties and repairs and Remington is therefore relieved of its duty to perform under the same.

## COUNTERCLAIMS

97.    Remington incorporates by reference its answers and affirmative defenses as set forth above in paragraphs 1-96 as if fully set forth herein and asserts the following counterclaims against Plaintiffs.

### Parties

98.    Upon information and belief, Plaintiff O.D.F. Optronics Ltd. ("ODF") is a foreign corporation based in Israel.

99.    Upon information and belief, Plaintiff Wave Group Ltd. ("Wave") is a foreign corporation also based in Israel and is the parent corporation of ODF.

100.    Remington is a Delaware corporation with a principal place of business located at 870 Remington Drive, Madison, North Carolina.

### Jurisdiction and Venue

101.    This is an action for declaratory judgment of non-infringement and invalidity of United States Patent No. 7,253,969 (filed May 12, 2003) ("the '969 patent") and United States Patent No. 7,362,516 (filed July 3, 2003) ("the '516 patent").   This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; the Lanham Act, 15 U.S.C. § 1051, *et seq.*; the Patent Laws of the United States, Title 35 United States Code; Rule 57 of the Federal Rules of Civil Procedure; and New York statutory and common law.

102.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, and 1367(a).

103.    Venue is proper in this Court under 28 U.S.C. § 1391(d).

## COUNT I

### Declaratory Relief Regarding Noninfringement Of Patents

104.    Remington incorporates by reference its allegations as set forth above in paragraphs 1-103 as if fully set forth herein.

105.    Based on Plaintiffs' filing of this lawsuit and Remington's Affirmative Defenses, an actual controversy has arisen and now exists between the parties as to whether or not Remington has directly or indirectly infringed the '969 and '516 patents.

106.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, Remington requests a declaration from the Court that Remington has not infringed any claim of the '969 and '516 patents, either directly, contributorily, or by inducement.

## COUNT II

### Declaratory Relief Regarding Invalidity of Patents

107.    Remington incorporates by reference its allegations as set forth above in paragraphs 1-106 as if fully set forth herein.

108.    Based on Plaintiffs' filing this lawsuit and Remington's Affirmative Defenses, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the '969 and '516 patents.

109.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, Remington requests a declaration from the Court that each of the claims of the '969 and '516 patents are invalid as they fail to comply with the provision of the Patent Laws of the United

States, 35 U.S.C. § 100, *et seq.*, including without limitation, to one more of 35 U.S.C. §§ 101, 102, 103, and/or 112.

## COUNT III

### Declaratory Relief Regarding Noninfringement of Trademarks

110.    Remington incorporates by reference its allegations as set forth above in paragraphs 1-109 as if fully set forth herein.

111.    Based on Plaintiffs' filing this lawsuit and Remington's Affirmative Defenses, an actual controversy has arisen and now exists between the parties regarding the alleged infringement of Plaintiffs' alleged "Eye Ball" trademark, purportedly the subject of U.S. Trademark Application No. 78/535,193.

112.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, Remington requests a declaration from the Court that Remington has not infringed the "Eye Ball" trademark or any other trademark purportedly owned by Plaintiffs' pursuant to the Trademark Laws of the United States, 15 U.S.C. § 100, *et seq.*, including without limitation, to one more of 15 U.S.C. §§ 1114, 1116, and/or 1125.

## COUNT IV

### Declaratory Relief Regarding Non-Breach of Contract

113.    Remington incorporates by reference its allegations as set forth above in paragraphs 1-112 as if fully set forth herein.

114.    Based on Plaintiffs' filing this lawsuit and Remington's Affirmative Defenses, an actual controversy has arisen and now exists between the parties regarding the alleged breach of a Distribution Agreement and a Termination, Settlement, and Release Agreement.

115.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, Remington requests a declaration from the Court that Remington has not breached any agreement with Plaintiffs or, in the alternative, that an agreement never existed.

Remington reserves the right to amend this Answer and to assert additional defenses, affirmative defenses, counterclaims or to supplement, alter or change this Answer, upon ascertaining more definite facts during and upon completion of their investigation and discovery.

## PRAYER FOR RELIEF

WHEREFORE, Remington prays that the Court enter judgment in its favor and grant the following relief:

1.    That Plaintiffs have and recover nothing from Remington;

2.    That the Court dismiss all counts of Plaintiffs' Complaint with prejudice;

3.    A declaration that the '969 and '516 patens are invalid;

4.    A declaration that Remington has not infringed any claim of the '969 and '516 patents;

5.    A declaration that Remington has not infringed any of Plaintiffs' purported trademarks;

6.    A declaration that Remington has not breached any agreement with Plaintiffs;

7.    A declaration that this case is exceptional under 35 U.S.C. § 285;

8.    An award to Remington of its costs and disbursements in this action, including reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285 and other applicable law; and

9.    An award to Remington for such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Remington hereby demands

a trial by jury of all issues so triable in this action.

Dated:      Uniondale, New York           Respectfully submitted,
              August 15, 2008

RUSKIN MOSCOU FALTISCHEK, P.C.

By:                                    
Mark S. Mulholland
Matthew F. Didora
East Tower, 15th Floor
1425 RexCorp Plaza
Uniondale, New York 11556-1425
Phone: (516) 663-6600

*Of Counsel:*

John F. Morrow, Jr. – *pro hac vice*
WOMBLE CARLYLE SANDRIDGE & RICE,
PLLC
One West Fourth Street
Winston-Salem, North Carolina 27101
Phone: (336) 721-3584

*Attorneys for Defendant*
*Remington Arms Company, Inc.*

15

## CERTIFICATE OF SERVICE

I, Matthew F. Didora, hereby certify that on August 15, 2008, I caused to be served a true copy of the annexed NOTICE OF MOTION AND MOTION TO DISMISS COUNT VIII OF PLAINTIFFS' COMPLAINT, to be filed with the Clerk of the Court and served in accordance with the Eastern District rules, by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to each of the following person at the last known address set forth:

GOLDBERG & RIMBERG, PLLC
Joel S. Schneck, Esq.
115 Broadway, 3rd Floor
New York, New York 10006
Attorneys for Plaintiffs


Dated:  August 15, 2008
            Uniondale, New York


Matthew F. Didora
Ruskin Moscou Faltischek, P.C.
1425 RexCorp Plaza
Uniondale, New York 11556
(516) 663-6600