Mark S. Mulholland
Matthew F. Didora
RUSKIN MOSCOU FALTISCHEK, P.C.
East Tower, 15th Floor
1425 RexCorp Plaza
Uniondale, New York 11556-1425
Phone: (516) 663-6600

John F. Morrow, Jr. – *pro hac vice*
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
One West Fourth Street
Winston-Salem, North Carolina 27101
Phone: (336) 721-3584

*Attorneys for Defendant*
*Remington Arms Company, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

O.D.F. OPTRONICS LTD. and
WAVE GROUP LTD.

                                **Plaintiffs,**       Case No. 08-CV-4746 (DLC/DFE)

      - against -

REMINGTON ARMS COMPANY, INC.,
MIGUEL PEREZ d/b/a TACTICAL DEPOT
and Does 1-10 being defendants whose names
are currently unknown but are engaged in the
wrongdoing alleged in the complaint herein,

                                **Defendants.**

-----------------------------------------------------------X

**DEFENDANT REMINGTON ARMS COMPANY, INC.'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO TRANSFER VENUE TO THE**
**<u>MIDDLE DISTRICT OF NORTH CAROLINA</u>**

## I. INTRODUCTION

Transfer of this action to the Middle District of North Carolina is warranted under 28 U.S.C. § 1404 for the convenience of the parties and witnesses, and in the interest of justice. The majority of the witnesses and documents that relate to Plaintiffs' claims are located in North Carolina, whereas it appears that no such witnesses or documents are located in New York. Federal courts have widely held that when the majority of witnesses are located in a district other than the district chosen by the plaintiff, and the events giving rise to the plaintiff's claims also occurred in another district, then the court should grant a motion to transfer venue. As detailed below, the Middle District of North Carolina is the most convenient and sensible forum for the adjudication of Plaintiffs' claims, and Remington respectfully requests that the Court transfer this case to that district.

## II. STATEMENT OF FACTS

### A. Plaintiffs' Claims Concern Documents, Witnesses, And Events Outside Of New York

O.D.F. Optronics Ltd. and Wave Group Ltd. (collectively "ODF" or "Plaintiffs") have alleged claims against Remington Arms Company, Inc. ("Remington") for patent infringement, trademark infringement, breach of contract, anticipatory breach, unjust enrichment, accounting, permanent injunction, and breach of covenant of good faith and fair dealing. (*See* Complaint, Counts I-IX) (Docket 1).[1] As detailed herein, the evidence supporting or contradicting ODF's claims is primarily based upon witnesses, documents and events located or occurring in the

---

[1] Moreover, despite Plaintiffs pleading various causes of action, this is nothing more than a breach of contract case. ODF's patent and trademark claims are barred by the "exhaustion" doctrine which states, in essence, that once a patented item with a trademark on it is sold the patent and trademark holder's right of control and exclusion is terminated and the buyer may resell the item free from any claim of infringement. *See Quanta Computer, Inc. v. LG Elects., Inc.*, 128 S.Ct. 2109, 2115, 170 L.Ed.2d 996 (2008) (exhaustion doctrine applies to patents) and *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61-62 (2d Cir. 1992) (exhaustion doctrine applies to trademarks). In addition,

Middle District of North Carolina, and bears no relation to witnesses, documents, or events that exist or occurred in New York.

As made clear in the Complaint and motion for preliminary injunction, each of ODF's claims is predicated on ODF's argument that Remington breached a Termination Agreement between Remington and ODF, when Remington sold 1,097 Eyeball units to Blue Star Consortium, Inc. ("Blue Star"). (*Id.*). As is further made clear by the parties' recent submissions in connection with ODF's pending motion for preliminary injunction, the witnesses having substantive knowledge concerning ODF's contentions appear to be as follows: (1) Remington employees Robert Pantle, Charles Lawson and Stephen Jackson, who are based in Madison, North Carolina (*see* Pantle and Lawson Declarations, submitted to the Court on August 28, 2008) (*see also*, Declaration of Robert Pantle submitted herewith, at ¶ 2); (2) ODF employee Eran Tibon, who is based in Israel (*see* Tibon Declaration, submitted to the Court on August 28, 2008); and (3) Blue Star employees Daniel Barks and Linda Duncan, who are presumably based close to Arlington, Virginia (*see* Barks and Duncan Declarations, submitted to the Court on August 28, 2008).[2] In addition to the above, to the extent other non-party testimony may be relevant, it would appear to come from witnesses located in Fresno or Los Angeles, California (although neither party submitted declarations from any such witnesses in connection with ODF's motion for preliminary injunction). (*See* Docket 26, Plaintiffs' Proposed Findings of Fact and Conclusions of Law, at ¶¶ 31 and 38).[3] Thus, while most of the relevant witnesses are located in or close to the Middle District of North Carolina, none are located in New York.

---

Count VIII ("Breach of Duty of Good Faith and Fair Dealing") is currently the subject of Remington's Motion to Dismiss (Docket 18).
[2] On multiple occasions, ODF has threatened to add Blue Star as a defendant in this action - - most recently in an improperly filed Amended Complaint. (*See* Docket 22).
[3] Plaintiffs' have also alleged that Remington has failed to properly charge and maintain the Eyeball units that were sold to Blue Star. (*See* Plaintiffs' Proposed Findings of Fact and Conclusions of Law, ¶¶ 37-40). Those units have

The same can be said of relevant documents. Remington's documents relating to the Termination Agreement and Remington's performance in connection with same (including documents relating to Remington's agreement with Blue Star) are located in Madison, North Carolina. (Pantle Declaration, submitted herewith, at ¶ 3). To the extent ODF has documents relating to the Termination Agreement, Remington assumes those would be located where ODF does business in Israel. To the extent Blue Star has documents relating to its agreement with Remington, Remington assumes those would be located where ODF is based - - in Arlington, Virginia.

As for the events giving rise to ODF's claims, Remington (based in Madison, North Carolina) sold the Eyeball units to Blue Star (based in Arlington, Virginia). The great majority of Remington's communicates with Blue Star regarding the Blue Star agreement take place from Remington's headquarters in Madison, North Carolina. (Pantle Decl., at ¶ 2). The Eyeball units are stored, maintained and shipped from a facility in Memphis, Tennessee. (*Id.* at ¶ 4).

### B. Remington Sought This Transfer After Making Extensive Good Faith Efforts to Settle the Case

Remington conducted settlement talks with Plaintiffs over the last several months. Unfortunately, the parties did not reach an agreement. A brief description of the procedural posture of the case explains why Remington's motion is timely, and why it is now appropriate to transfer this case to the Middle District of North Carolina.

On May 21, 2008, Plaintiffs filed the underlying complaint and moved for a temporary restraining order and preliminary injunction. (Docket 1). On the afternoon of May 21, Judge

---

been properly stored and maintained in a facility in Memphis, Tennessee. (*See* Lawson Decl., submitted to the Court August 28, 2008, at ¶ 9). Thus the operative facts regarding this allegation also bear no relation to New York and are close to the Middle District of North Carolina.

3

Batts denied Plaintiffs' request for a temporary restraining order, and set a scheduling conference before Judge Cote for June 3, 2008. The parties were directed to discuss the pending motion for a preliminary injunction during the June 3 conference. (Docket 3).

During the June 3 scheduling conference, the parties and Court agreed that the parties would discuss settlement over the next week, and if settlement discussions were unsuccessful, the parties would propose a preliminary injunction schedule on June 11, 2008. The Court further referred the case to Magistrate Judge Eaton for a settlement conference. (Docket 6).

On June 11 the parties requested an additional day to submit a proposal to the Court. (Docket 8). Because settlement negotiations were ongoing, on June 12 the parties proposed to the Court that they would enter into a 2-week litigation standstill, during which time the parties and their principals would continue to meet and confer regarding settlement. (Docket 9). The parties further stated that they would inform the Court if they had not settled the case by the conclusion of the 2-week standstill. (*Id.*).

On June 17, the Court entered a Scheduling Order which directed the parties to set a settlement conference with Magistrate Judge Eaton, and which further provided a preliminary injunction schedule in the event settlement could not be achieved. (Docket 10). The schedule included: (1) completing fact discovery relevant to the motion by August 1; (2) submitting opening briefs, affidavits, exhibits, and proposed findings of fact and conclusions of law by August 28; (3) submitting a list of affiants to be cross-examined by September 5; (4) submitting reply briefs by September 12; and (5) setting a preliminary injunction hearing for September 22. (*Id.*).

The parties thereafter engaged in further settlement discussions, and on June 24 conducted a settlement teleconference that concluded with Remington agreeing to submit a

4

settlement proposal the following day. On June 25, Remington submitted such a proposal, which was rejected outright by ODF on June 27.

On June 30, Remington submitted a new proposal to ODF. Remington's June 30 proposal led to further discussions between June 30 and July 15. As shown by the e-mail correspondence attached as Exhibit A to the accompanying Declaration of John F. Morrow, Jr., Remington's and ODF's counsel reached agreement on principle terms for a settlement on July 15, 2008. (Morrow Decl., at Ex. A thereto).

As shown by that correspondence, while negotiating the settlement Remington advised ODF that non-party Blue Star did not approve of the settlement because Blue Star did not want the Eyeball units to be destroyed. (*Id.*). Nevertheless, on July 15, 2008, counsel for ODF told counsel for Remington that ODF planned to move forward with the litigation unless Remington would agree to the above-stated terms by July 16, 2008. This prompted a July 15, 2008 e-mail from Remington's counsel to ODF's counsel, confirming settlement on those terms. (*Id.*). On July 17, 2008, ODF's counsel responded by requesting assurances that Remington was still in agreement with the terms, which Remington promptly provided. (Morrow Decl., at Ex. B thereto, July 17, 2008 Emails between Counsel for ODF and Remington).

Unfortunately, after agreeing to the settlement terms ODF backed out of the deal. Specifically, late in the day on July 17, Blue Star notified ODF that it planned to intervene in this lawsuit. (Morrow Decl., at Ex. C thereto, July 17, 2008 letter from Blue Star to ODF). After receiving that notice, ODF took the position that the settlement with Remington was only valid if Remington would agree to defend and indemnify ODF with respect to any claims asserted by Blue Star. (Morrow Decl., Ex. D, July 18-19, 2008 e-mails between counsel for ODF and Remington). According to ODF, unilateral indemnification from Remington was an "inherent"

5

part of the deal, even though ODF had never previously mentioned indemnification despite knowing that Blue Star objected to the settlement. (*Id.*). Remington was unwilling to add this new material term to the settlement, and thus further discussions broke down.

Pursuant to the Court's Scheduling Order, however, the parties moved forward with a settlement conference before Magistrate Judge Eaton on August 4, 2008. Blue Star and its counsel attended the conference. (Morrow Decl., at ¶ 6). During the conference, Magistrate Judge Eaton focused the discussions between ODF and Blue Star.[4] (Morrow Decl., at ¶ 7). Remington was not privy to those discussions, but was informed that although Blue Star made several proposals to ODF, ODF refused to respond with any formal offers.[5] (*Id.* at ¶ 8). The settlement conference thus concluded unsuccessfully, with ODF requesting additional time to consider Blue Star's proposals and respond. Remington has been informed that ODF never substantively responded to any of Blue Star's proposals. (*Id.*).

Given the lack of settlement progress, on August 15, 2008, Remington filed its answer. (Docket 17). In its answer, Remington expressly denied that venue was proper, and moved to dismiss Count VIII of ODF's complaint. (Docket 17, at ¶¶ 7-8, and Dockets 18-20).

On August 26, the Court entered an order directing ODF to file its opposition to the motion to dismiss by September 3. (Docket 21). In the interim, ODF attempted to file an amended complaint on August 25 (adding Blue Star as a defendant and dropping Count VIII), but apparently withdrew same after realizing that it could not amend as of right. (*See* Docket 22).

---

[4] This made sense to Remington as Remington remained flexible and believed it was logical for those parties to attempt to reach agreement on how the Eyeball units would be handled moving forward.
[5] Remington was further informed that at one point ODF's representative, Eran Tibon, stated that he did not have authority to respond to a proposal from Blue Star. (*Id.*).

On August 28, the parties filed their opening papers in connection with Plaintiffs' pending motion for preliminary injunction. Thereafter, on September 3, 2008, Plaintiffs confirmed their intention to seek leave of Court to file an amended complaint. (Morrow Decl., at Exhibit E thereto).

Accordingly, since the case was filed Remington has been negotiating in good faith in an attempt to settle. Remington promptly filed this motion after exhausting those settlement efforts, and after Plaintiffs indicated their intention to move to amend the complaint.

### III. ARGUMENT

#### A. Authority Governing This Motion

The federal change of venue statute, 28 U.S.C. § 1404(a), provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

When venue is challenged, the plaintiff "bears the burden of demonstrating that 'a substantial part of the events or omissions giving rise to the claim occurred' in this district." *G.F.C. Fashions v. Goody's Family Clothing*, No. 97 Civ. 0730, 1998 U.S. Dist. LEXIS 1989, *5, 1998 WL 78292 (S.D.N.Y. Feb. 24, 1998) (quoting *D'Anton Jos, S.L. v. Doll Factory, Inc.*, 937 F.Supp. 320, 321 (S.D.N.Y.1996)).

The Supreme Court has determined that district courts have discretion under 28 U.S.C. § 1404 to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and fairness. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988). Among the factors a court should consider in determining whether to transfer venue include: (1) the place where the operative facts took place; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of relevant documents and other sources of proof; (5) the forum's familiarity with the governing law; (6) the availability of process to

7

compel unwilling witnesses; and (7) the plaintiff's choice of forum. *ZPC 2000, Inc. v. SCA Group, Inc.*, 86 F.Supp.2d 274, 278-279 (S.D.N.Y. 2000).

As the purpose of Section 1404(a) is to "prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge FBL-585,* 364 U.S. 19, 26, 27 (1960)) The "core determination under § 1404(a) is the center of gravity of the litigation...." *Hubbell Inc. v. Pass & Seymour, Inc.,* 883 F.Supp. 955, 962 (S.D.N.Y.1995); *ZPC 2000, supra,* 86 F.Supp.2d at 278-279 (the place where the operative facts occurred is a "primary factor" in this analysis) Further, the convenience of the parties and witnesses is one of the more important considerations. *First City Federal Savings Bank v. Register,* 677 F.Supp. 236, 237 (S.D.N.Y.1988)).

### B. The Relevant Factors Overwhelmingly Favor Transfer To North Carolina

#### 1. The Operative Facts Took Place In North Carolina

ODF's claims are largely predicated on events that transpired in North Carolina, and bear little if any relation to New York. Specifically, Plaintiffs' claims are all founded on the assumption that Remington's agreement to sell the Eyeball units to Blue Star constitutes a breach of the Termination Agreement between Remington and ODF. (*See, e.g.,* Tibon Declaration, submitted by Plaintiffs on August 28, 2008, at ¶¶ 25-33). The Termination Agreement was entered into between Remington (which based in North Carolina) and ODF (which based in Israel). The Blue Star Agreement was entered into between Remington (which based in North Carolina) and Blue Star (which is based in Virginia). The great majority of Remington's communicates with Blue Star regarding the Blue Star agreement have taken place from Remington's headquarters in Madison, North Carolina. (Pantle Decl., at ¶ 2). The Eyeball units are stored, maintained and shipped from a facility in Memphis, Tennessee. (*Id.* at ¶ 4). Thus, the

8

operative facts relating to this dispute bear a substantial relation to North Carolina, and no relation to New York.

### 2. Witnesses, Relevant Documents And Other Sources Of Proof Are In North Carolina And Tennessee, Rather Than New York

Transfer is also appropriate because most of the witnesses and documents relevant to ODF's claims are located in the Middle District of North Carolina. Remington's executives and business personnel with knowledge of the relationships and agreements with ODF and Blue Star are all located at Remington's corporate headquarters in Madison, North Carolina. (Pantle Decl., at ¶ 2). The same can be said for documents Remington has relating to ODF and Blue Star. (*Id.* at ¶ 3). The other likely witnesses are all located outside of New York and include Eran Tibon, plaintiffs' CFO/COO (Israel), Daniel Barks, President of Blue Star (Arlington, Virginia), and Linda Duncan, Chief Financial Officer of Blue Star (Arlington, Virginia). These facts also strongly favor granting this motion. *See ZPC 2000, supra*, 86 F. Supp. 2d at 278 (transferring action to district where most of the relevant witnesses and documents were located); *Handler v. Regents of Univ. of Michigan*, No. 00-6314, 2000 WL 1635701, at *1 (S.D.N.Y. Nov. 1, 2000) (transferring breach of contract case from Southern District of New York to Eastern District of Michigan because key witnesses and documents were located there).[6]

### 3. North Carolina Is More Convenient For The Parties and Witnesses

Neither party is located in New York. Remington is located in Madison, North Carolina and ODF is located in Israel. Non-party Blue Star is located in Arlington, Virginia. It is inconvenient for Remington's (and presumably Blue Star's) witnesses to travel to Manhattan.

---

[6] As for the Eyeball units themselves, they are being stored and maintained in a facility in Memphis, Tennessee. (Pantle Decl., at ¶ 4). Since Memphis is much closer to North Carolina than New York, ease of access to any evidence related to the storage and maintenance of the units also favors transfer to the Middle District of North Carolina.

Conversely, ODF can travel to any of the several international airports located in and close to the Middle District of North Carolina (Greensboro, Raleigh/Durham, or Charlotte), just as easily as it could travel to New York. Consequently, this factor also favors transfer to North Carolina.

### 4. The Remaining Factors Also Favor Transfer To North Carolina Or Are Neutral

The Middle District of North Carolina has equal familiarity with the law governing ODF's nine counts. Indeed, ODF does not plead a single count specific to New York law. (*See* Docket 1, Complaint at Counts I-IX). In addition, to the extent it is necessary to compel unwilling witnesses to provide testimony, the Middle District of North Carolina would be preferable since Remington's witnesses are located there.

Further, although the plaintiffs' choice of a particular forum is a factor to consider, "plaintiff's choice of forum [is given] substantially less deference when the 'operative facts upon which the litigation is brought bear little material connection to the chosen forum.'" *Handler*, 2000 WL 1635701, at *1 (S.D.N.Y. Nov. 1, 2000) (quoting *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998); see also *Fontana v. E.A.R.*, 849 F. Supp. 212 (S.D.N.Y. 1994). Because the operative facts upon which ODF's claims are not related to New York, ODF's choice of forum is given "substantially less deference" than it otherwise would be given, and thus other factors govern, such as the location of key witnesses and documents. *Handler*, 2007 WL 1635701, at 1. As detailed above, those factors favor transfer to the Middle District of North Carolina.

### C. The Termination Agreement Voided The Forum Selection Clause Contained In The Former Distribution Agreement

ODF bases its entire venue argument on a forum selection clause that was contained in the former Distribution Agreement between the parties. (*See* Docket 1, Complaint at ¶ 8).

10

Notably, however, the Termination Agreement at issue in this case expressly voided and superseded that Distribution Agreement. The Termination Agreement specifically states that "[t]he parties hereby agree that the [Distribution] Agreement shall terminate on February 15, 2008." (*See* Pantle Decl., submitted Aug. 28, 2008, at ¶ 8 and DX 4 thereto). Unlike the Distribution Agreement, the Termination Agreement does not contain a venue selection clause. Therefore ODF's reliance on the Distribution Agreement for venue selection is misplaced and cannot provide a basis to defeat this motion.

### D. Relevant Authority Also Holds That Transfer Is Proper Based On ODF's Intellectual Property Claims

Transfer of this action is further appropriate because ODF's claims for trademark infringement and patent infringement also allege conduct that occurred exclusively outside the Southern District of New York. *See, e.g., H.B. Sherman Mfg. Co. v. Rain Bird Nat'l Sales Corp.*, 979 F. Supp. 627, 631 (N.D. Ill. 1997) (transferring trademark infringement action to district where majority of material events occurred). ODF's patent and trademark infringement claims all involve allegations relating to Remington's sale of Eyeball units to Blue Star. Again, Remington is located in North Carolina and Blue Star is located in Virginia. Relevant witnesses are located in those locations respectively. Thus the claims have no connection to New York.

Moreover, courts have routinely determined that, where the majority of the alleged acts of trademark infringement occurred in another district, and the majority of witnesses reside there, the defendant's motion to transfer venue should be granted. In *H.B. Sherman Mfg. Co.*, 979 F. Supp. at 630, for example, the plaintiff filed a trademark infringement claim in the Northern District of Illinois, despite the fact that defendant was located in California. The court noted that "intellectual property cases generally focus on the activities of the alleged infringer, its employees, and its documents; therefore, the location of the infringer's place of business is often

the critical and controlling consideration." *Id.* The court determined that the fact that the defendant marketed its products nationwide did not mean it should be unfairly compelled to litigate the case in the district chosen by the plaintiff. *Id.* Thus, because most of the pertinent witnesses and documents were located in California, the court granted the defendant's motion to transfer. *Id.*

Likewise, in *Schuur v. Walt Disney Co.*, No. 98-2212, 1998 WL 190321 (S.D.N.Y. Apr. 21, 1998), the plaintiff filed an action for false advertising, trademark dilution, and unfair competition in the Southern District of New York, relating to the distribution of a motion picture and soundtrack. *Id.*, at *3. The court determined that most of the operative facts occurred in California, where the writing, acquisition, creation, marketing, production and distribution of the motion picture and soundtrack occurred. *Id.* at *10. Although the decision to produce the soundtrack occurred in New York, where at least one relevant witness resided, the court determined that the majority of the witnesses and operative facts were in California. *Id.*, at *8. Accordingly, the court granted the defendant's motion to transfer. *See also Olympia Group, Inc. v. Cooper Indus., Ind.*, No. 00-7367, 2001 WL 506219, at *2-3 (S.D.N.Y. May 14, 2001) (transferring trademark infringement case from Southern District of New York to Eastern District of North Carolina for convenience of witnesses despite sales of some product in New York). This authority likewise supports transferring the case to North Carolina.

## IV. CONCLUSION

The convenience of the parties and witnesses and the interest of justice overwhelmingly support transfer of this action to the Middle District of North Carolina. ODF's claims are based on alleged events that occurred in the Middle District of North Carolina, which is also where the vast majority of relevant witnesses and documents are located. In contrast, the case bears no

reasonable relation to New York. Accordingly, the Court should transfer this action to the Middle District of North Carolina pursuant to 28 U.S.C. § 1404.

As a final matter, Remington is mindful that the Court has scheduled a hearing on ODF's motion for a preliminary injunction for September 22, 2008. Remington asserts that there is no irreparable harm occurring to ODF and none would occur pending transfer of this case. (*See* Dockets 23-24). Even if a preliminary injunction is warranted (which it is not), transfer to the Middle District of North Carolina should only require a short delay in rescheduling the hearing before a judge in that district. Accordingly, Remington has contemporaneously moved the Court to stay the proceedings on ODF's motion for a preliminary injunction, pending the Court's resolution of Remington's motion to transfer venue.

Dated:    Uniondale, New York
          September 3, 2008

                                        Respectfully submitted,

                                        RUSKIN MOSCOU FALTISCHEK, P.C.

                                        By: _____
                                        Mark S. Mulholland
                                        Matthew F. Didora
                                        East Tower, 15th Floor
                                        1425 RexCorp Plaza
                                        Uniondale, New York 11556-1425
                                        Phone: (516) 663-6600

                                        *Of Counsel:*

                                        John F. Morrow, Jr. – *pro hac vice*
                                        WOMBLE CARLYLE SANDRIDGE &
                                        RICE, PLLC
                                        One West Fourth Street
                                        Winston-Salem, North Carolina 27101
                                        Phone: (336) 721-3584

                                        *Attorneys for Defendant*
                                        *Remington Arms Company, Inc.*